Larry **TEDESCHI**, Appellant,

v.

Jesse **BROWN**, Secretary of Veterans Affairs, Appellee.

No. 93–1232.

United States Court of Veterans Appeals.

March 8, 1995.

Edward Rosenthal, was on the brief, for appellant.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, and Joan E. Moriarty, Washington, DC, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and FARLEY and MANKIN, Judges.

MANKIN, Judge:

The appellant, Larry Tedeschi, appeals the September 16, 1993, decision of the Board of Veterans' Appeals (BVA or Board) which denied service connection for a foot arch condition and an increased evaluation for bilateral calluses. Both the Secretary of Veterans Affairs (Secretary) and the appellant have submitted briefs. The Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons set forth below, the Court affirms the September 1993 decision of the BVA.

## I. FACTUAL BACKGROUND

The appellant served on active duty in the United States Army from May 1952 to May 1954. His February 1952 preinduction examination revealed calluses over the metatarsal regions of the feet. Other service medical records (SMRs) report calluses on both feet and treatment for this condition by a chiropodist. A May 1954 SMR reflects that a chiropodist treated the appellant's feet by reducing the calluses and prescribing metatarsal arches. In the separation exam, the appellant's feet were clinically evaluated as normal but the exam noted "Foot trouble. Has callouses and arch supports."

In August 1991, the appellant filed a claim for calluses and arch problems. The regional office (RO) sent the appellant a September 1991 letter that requested additional evidence related to his claim. The appellant responded by submitting an October 1991 statement. In the statement, the appellant said, "It is conceivable that this condition [rheumatoid arthritis] exists as a result of serious problems with my feet." He also stated that he had been hospitalized approximately 20 times in the last 30 years for various illnesses stemming from problems with his feet.

A Department of Veterans Affairs (VA) examination was performed in October 1991. The evaluating physician noted two large calluses on the ball of the left foot and one small callus on the ball of the right foot. The physician's diagnosis was chronic calluses of the feet, and he opined that the calluses had been aggravated by rheumatoid arthritis. The appellant was also examined by a VA orthopedist that same month. The orthopedist's impressions were (1) generalized rheumatoid arthritis with multiple nodules on the joints and deformities of the digits of both hands and feet; (2) callosities on the soles of the feet at the metatarsophalangeal joints of the first toe, and at the heads of the second, third, and fifth metatarsal; and (3) rheumatoid nodules on his Achilles tendons and on the dorsum of the right foot.

In a November 1991 rating decision, the RO granted a 0% rating for calluses, and

denied service connection for the foot arch problem and rheumatoid arthritis. The appellant filed a Notice of Disagreement (NOD) in December 1991. In the NOD, the appellant contested only the denial of service connection for the foot arch problem and the 0% rating for calluses.

At a May 1992 RO hearing, the appellant testified that he began experiencing foot problems while in service and continued to have these problems that required orthopedic shoes. The appellant also said that he had been treated by a podiatrist, Edward Hochman, D.S.P., who prescribed arch supports. He reported that attempts were made to obtain Dr. Hochman's medical records but that the records were no longer available. However, at the hearing, the appellant submitted Dr. Hochman's payment records from 1971 through 1973 and a 1968 receipt from Dr. Hochman.

In June 1992, the appellant submitted a statement from Angelo Bigelli, D.P.M. Dr. Bigelli stated that he was treating the appellant for "[m]etatarsalgia secondary to rheumatoid arthriris [sic] with significant orthopedic deformities bilaterally." The RO issued a June 1992 decision denying the appellant's claim. The decision said:

> The service-connected callouses [sic] are evaluated as a benign skin growth and may be rated on the basis of a skin disease under [Diagnostic Code (DC) ] 7819–7800 but in view of the location[,] on the soles of the feet[,] would be more appropriately rated on the basis of disabling manifestations, to wit, interference with gait. However, it is evident that veteran's [sic] problems in this regard are attributable to the manifestations of a rather severe rheumatoid arthritis....

The RO issued a Statement of the Case in June 1992. The appellant and the appellant's service representative submitted statements that alleged error in the RO decision that denied service connection. In September 1993, the BVA denied the appellant's claim. The BVA decision said:

> In evaluating the evidentiary record, the Board finds that the veteran has not presented any competent medical evidence to relate his current foot arch disorder to

service. Although the service medical records indicate that the veteran was issued metatarsal arch supports in service, it was for the purpose of alleviating his chronic problems with calluses.... In fact, the evidence of record indicates that most of the veteran's foot problems are related to rheumatoid arthritis. Inasmuch as the veteran has not presented any cognizable evidence to support his assertions, the Board finds that the claim is not well grounded.

> The veteran is currently assigned a noncompensable evaluation for calluses of both feet which the RO has rated analogously to eczema. However, the Board finds that that analogy is inapt since the symptoms and manifestations of eczema differ substantially from those of calluses. See 38 C.F.R. § 4.20 (1992). A more likely analogous rating would be under Diagnostic Code 5279 or 7804 for anterior metatarsalgia or a superficial scar, respectively.... However, the current medical evidence of record does not show any functional impairment of gait or other disability due to the service-connected calluses of either foot which would warrant the assignment of a compensable evaluation.

*Larry Tedeschi*, BVA 92–15 796, at 4–5, (Sept. 16, 1993).

## II.  ANALYSIS

### A.  Claim for an Increased Rating for Bilateral Calluses

The appellant is service connected for calluses of the feet, which are currently assigned a 0% rating. In his claim, he asserts that the calluses are painful, tender, and an impairment to his gait, and that he is entitled to an increased rating. The RO analogized the claim to eczema but the BVA, stating that the RO's analogy was inapt since the symptoms and manifestation of eczema differ substantially from those of calluses, analogized the claim to one under 38 C.F.R. § 4.71(a), DC 5279, anterior metatarsalgia, or 38 C.F.R. § 4.118, DC 7804, superficial scar. In *Pernorio v. Derwinski*, 2 Vet.App. 625, 629 (1992), this Court held:

[T]he Board should explain in its decision the diagnostic code under which the claim is evaluated, and, most importantly, explain any inconsistencies, apparent or real, that result when the Board cites a code different from that used by the VA at other times in the history of the adjudication of the claim, including codes used by the agency of original jurisdiction or cited in the Statement of the Case.

Here, the Board provided an incomplete explanation for the various diagnostic codes used in evaluating the appellant's calluses and failed to give adequate reasons and bases as to why the diagnostic codes that were chosen were more appropriate than the one used by the RO. *See Pernorio, supra; Lendenmann v. Principi,* 3 Vet.App. 345, 350–51 (1992).

▮▮▮ The Board's error, however, is harmless because it did not result in prejudice to the appellant since it does not change the resolution of the appellant's claim. *See* 38 U.S.C. § 1131 (1994); 38 U.S.C. § 7261(b); *see also Gabrielson v. Brown,* 7 Vet.App. 36, 41 (1994); *Sanchez v. Derwinski,* 2 Vet.App. 330, 333 (1992). The Board's denial of a compensable evaluation for bilateral calluses is not clearly erroneous because, regardless of the diagnostic code chosen, there is no medical evidence that links the appellant's pain, tenderness, and impairment of gait to the service-connected calluses. *See Rabideau v. Derwinski,* 2 Vet.App. 141, 143 (1992). The lack of medical evidence linking the appellant's current disabilities to calluses, coupled with the medical reports which opine that the calluses are aggravated by the rheumatoid arthritis and that the metatarsalgia is secondary to the rheumatoid arthritis, constitutes a plausible basis for the Board's denial of a compensable rating for calluses. ("Metatarsalgia" is "a cramping burning pain below and between the metatarsal bones where they join the toe bones." WEBSTER'S MEDICAL DESK DICTIONARY 430 (1986).) Since there is a plausible basis in the record for the Board's finding, the Court will affirm the Board's denial of a compensable evaluation for bilateral calluses.

## B. Service Connection for Arch Disorder

▮▮▮ The determination whether a claim is well grounded is a matter of law which this Court determines de novo. *See Grottveit v. Brown,* 5 Vet.App. 91, 92 (1993). Section 5107(a) of title 38 of the United States Code provides that "a person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C. § 5107(a); *see Tirpak v. Derwinski,* 2 Vet.App. 609, 611 (1992). In *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990), this Court defined a well-grounded claim as "a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of § [5107(a)]." Where the determinative issue involves either medical causation or a medical diagnosis, competent medical evidence is required to fulfill the well-grounded claim requirement of 38 U.S.C. § 5107(a); lay testimony, itself, will not satisfy this burden. *Grottveit,* 5 Vet.App. at 93; *Espiritu v. Derwinski,* 2 Vet.App. 492 (1992). If the claimant fails to submit such supportive evidence, the claim is not well grounded and the VA has no duty to assist the appellant in developing his claim or, for that matter, to adjudicate the claim. *See* 38 U.S.C. § 5107(a); *Grottveit, supra.*

▮▮▮ Upon reviewing the evidence of record, the Court finds that the appellant has failed to submit medical evidence that he suffers from an arch disorder. *See Espiritu, supra.* The appellant's SMRs and post-service medical records do not contain any express diagnosis of an arch disorder. The SMRs show only that the appellant's callus condition was treated with metatarsal arches and arch supports; the record contains no diagnosis of an arch disorder. Even if Dr. Bigelli's June 1992 diagnosis of bilateral orthopedic deformities is viewed as a medical diagnosis of an arch disorder, there is no medical evidence that the disorder was incurred in or aggravated by service. Because a lay person is not competent to offer evidence that requires medical knowledge, the appellant's assertion that he incurred an arch

disorder during service is not competent evidence of medical diagnosis and, therefore, is insufficient to render his claim well grounded under section 5107(a). *See Grivois v. Brown,* 6 Vet.App. 136, 140 (1994) (citing *Espiritu,* 2 Vet.App. at 494). Thus, given the lack of medical evidence to support the appellant's claim, the Court holds that the appellant's claim is not well grounded.

## III.  CONCLUSION

Upon consideration of the record and the pleadings, the Court holds that the appellant has not demonstrated that the Board committed factual or legal error which would warrant reversal. *Gilbert v. Derwinski,* 1 Vet.App. 49, 52–53; *see also Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Danville Plywood Corp. v. United States,* 899 F.2d 3 (Fed.Cir.1990).

Accordingly, the BVA decision of September 16, 1993, is AFFIRMED.