Citation Nr: 1448548 
Decision Date: 10/31/14 Archive Date: 11/05/14

DOCKET NO. 10-45 926 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUES

1. Entitlement to a compensable initial rating prior to May 6, 2014, for a migraine headache disability. 

2. Entitlement to a disability rating in excess of 50 percent after May 6, 2014, for a migraine headache disability. 


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


ATTORNEY FOR THE BOARD

Thomas D. Jones, Counsel



INTRODUCTION

The Veteran, who is the appellant, served on active duty from November 1987 to April 2009. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a June 2009 rating decision of a Regional Office (RO) of the Department of Veterans Affairs (VA) in Winston-Salem, North Carolina. 


FINDINGS OF FACT

1. Prior to May 6, 2014, the Veteran's migraine headache disability was not manifested by characteristic prostrating attacks. 

2. Effective May 6, 2014, the Veteran's migraine headache disability has been assigned a 50 percent rating, which is the maximum schedular rating authorized for headaches under Diagnostic Code 8100. Referral for extraschedular consideration is not warranted. 


CONCLUSIONS OF LAW

1. The criteria for a compensable initial rating prior to May 6, 2014, for a migraine headache disability are not met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 4.3, 4.7, 4.124a, Diagnostic Code 8100 (2014). 

2. The criteria for a disability rating in excess of 50 percent after May 6, 2014, for a migraine headaches disability are not met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 4.3, 4.7, 4.124a, Diagnostic Code 8100 (2014). 



REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102 , 5103, 5103A, 5107, 5126 (West 2002); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014). The United States Court of Appeals for Veterans Claims (Court) issued a decision in the appeal of Dingess v. Nicholson, 
19 Vet. App. 473 (2006), which held that the notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim, including the degree of disability and the effective date of an award. Those five elements include: (1) veteran status; (2) existence of a disability; (3) a connection between a veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. 

Upon receipt of the Veteran's claim, VA issued VCAA notice in the form of a November 2008 letter which informed the Veteran of the evidence generally needed to support the claim of service connection. This notice included information regarding the assignment of an initial rating and effective date for an award of service connection; what actions he needed to undertake; and how VA would assist her in developing her claim. The November 2008 VCAA notice was issued to the Veteran prior to the rating decision from which the instant appeal arises. 

Moreover, because this appeal arises in part from the Veteran's timely disagreement with the initial rating assigned following a grant of service connection, no additional notice is required regarding this downstream element of the service connection claim. The United States Court of Appeals for the Federal Circuit (Federal Circuit) and the Court have similarly held regarding the downstream element of an initial rating that, once service connection is granted the claim is substantiated, additional notice is not required, and any defect in notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007) (noting that, once an initial VA decision awarding service connection and assigning a disability evaluation and effective date has been made, 38 U.S.C. § 5103(a) notice is no longer required); 38 C.F.R. § 3.159(b)(3) (no VCAA notice required because of filing of NOD). 

Regarding the duty to assist in this case, VA has secured or attempted to secure all relevant documentation required by the VCAA or identified by the Veteran. The Veteran's service treatment records, VA medical records, and any identified private medical records have all been obtained. The Veteran was afforded several VA medical examinations for the disability on appeal, most recently in May 2014. The VA and private medical evidence contains sufficiently specific clinical findings and informed discussion of the pertinent history and clinical features of the disability on appeal and is adequate for purposes of this appeal, as it is competent medical evidence pertaining to the existence and etiology of the claimed current disability sufficient to decide the claim. 

The Board is not aware of, and the Veteran has not suggested the existence of, any additional pertinent evidence not yet received. All identified and available relevant documentation has been secured and all relevant facts have been developed. There remains no issue as to the substantial completeness of the claim. 38 U.S.C.A. §§ 5103, 5103A, 5107; 38 C.F.R §§ 3.102, 3.159, 3.326(a). For these reasons, the Board finds that the VCAA duties to notify and to assist have been met. 

The Veteran seeks a compensable rating prior to May 6, 2014, and in excess of 50 percent thereafter for migraine headaches. Disability evaluations are based upon the average impairment of earning capacity as contemplated by the schedule for rating disabilities. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. In order to evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of the Veteran's condition. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). In adjudicating increased rating claims, the level of disability in all periods since the effective date of the grant of service connection must be taken into account, to include the possibility that a staged rating may be assigned. Hart v. Mansfield, 21 Vet. App. 505 (2007). As such, the Board will consider whether staged ratings are appropriate to the pending appeals. In cases in which a reasonable doubt arises as to the appropriate degree of disability to be assigned, such doubt shall be resolved in favor of the Veteran. 38 C.F.R. § 4.3. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. 38 C.F.R. § 4.7. 

The Veteran's headaches are rated under Diagnostic Code 8100, for migraine headaches. Pursuant to this code, a maximum schedular evaluation of 50 percent is awarded when migraines are characterized by very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability. A 30 percent rating is assigned for migraines with characteristic prostrating attacks occurring on an average once a month over the last several months. A 10 percent rating is assigned for characteristic prostrating attacks averaging one in two months over the last several months, and less frequent attacks warrant a noncompensable rating. 38 C.F.R. § 4.124a, Diagnostic Code 8100. 

The rating criteria do not define "prostrating," nor has the Court. See Fenderson v. West, 12 Vet. App. 119 (1999) (wherein the Court quotes Diagnostic Code 8100 verbatim but does not specifically address the matter of what is a prostrating attack). By way of reference, the Board notes that in Dorland's Illustrated Medical Dictionary 1367 (28th Ed. 1994), "prostration" is defined as "extreme exhaustion or powerlessness." 

Considering first entitlement to a compensable initial rating prior to May 6, 2014, the Board finds the preponderance of the evidence to be against a compensable rating. 

The Veteran was afforded a December 2008 VA pre-discharge examination, at which time she reported a history of migraine headaches since 1999. She stated these headaches occurred twice a week and lasted for seven minutes. When her headaches occurred the Veteran reportedly stayed in bed and was unable to do anything. The Veteran also stated, however, that when necessary she was able to perform activities of daily living during flare-ups, and she continued to work through the headaches. She also denied any functional impairment as a result of her migraine headaches. On objective evaluation her cranial nerves and coordination were normal and a diagnosis of migraine headaches was given. 

A September 2009 private treatment record noted the headaches were light sensitive and Motrin helped and described the headaches as occurring almost daily, tight and throbbing and occasional scintillations and no focal symptoms. The diagnosis was migraine and imitrex was prescribed. The Veteran was examined again by Premier Medical Group in September 2009, at which time her migraines had reportedly improved with medication. A December 2009 private record indicated the imitrex worked and the headaches were not as severe or frequent. The private medical records consistently describe the problem as "migraine, unspecified without mention of intractab." In this regard, intractable is defined as "resistant to cure, relief, or control." Dorland's Illustrated Medical Dictionary 946 (30th ed. 2003). The reports did not indicate that she experienced any prostrating attacks. Other VA records during this period describe the headaches as persistent but indicate she treated with a private physician. Significantly, a November 2010 VA social work record indicated the Veteran reported that she had to leave work due to a bad migraine and not having anything for it. A VA record in September 2011 described the headaches on stable on Zomig. 

In her November 2010 VA Form 9, the Veteran stated she experienced migraine headaches at least twice per week, and they impaired her ability to concentrate and perform the tasks of her employment. She did not assert, however, that these headache episodes resulted in an inability to perform most activities or a similar level of impairment. 

Thus, based on the totality of the record, the Board concludes that for the period in question, the Veteran's headache disability more closely approximated the criteria for the currently-assigned noncompensable rating. The Veteran has reported severe headaches that reduced her functional capacity, but she has admitted that during such headaches she was able to perform her daily activities; thus, her headaches cannot be characterized as "prostrating." Also, she has stated that she had not lost any significant time at her employment due to such headaches, indicating that they were infrequent or of less-than-prostrating severity. Although the Veteran experienced headaches which required varying treatment, overall, the preponderance of the evidence is against a compensable initial rating prior to May 6, 2014. Additionally, because the Veteran has displayed a similar level of impairment for the entirety of the time period in question, a staged rating in excess of that already assigned is not warranted. See Hart, 21 Vet. App. at 505. 

The Board must next consider the period commencing May 6, 2014. As noted above, the Veteran has been awarded a 50 percent disability rating for this period, which represents the maximum schedular rating. There are no other diagnostic codes that are applicable. See Butts v. Brown, 5 Vet. App. 532, 538 (1993). Because the Veteran is at the maximum schedular rating for headaches, there is no legal basis upon which to award a higher schedular rating. See Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). Therefore, the schedular component of the Veteran's increased rating claim must be denied. As a 50 percent rating is the maximum schedular evaluation available under Diagnostic Code 8100, the Board must next consider whether referral for extra-schedular consideration is warranted. 

Disability evaluations are determined by the application of a schedule of ratings which is based on average impairment of earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. To accord justice in an exceptional case where the schedular standards are found to be inadequate, the RO is authorized to refer the case to the Chief Benefits Director or the Director, Compensation and Pension Service for assignment of an extraschedular evaluation commensurate with the average earning capacity impairment. 38 C.F.R. § 3.321(b)(1). 

Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. Only if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology, so is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." 38 C.F.R. § 3.321(b)(1) (related factors include "marked interference with employment" and "frequent periods of hospitalization"); Thun v. Peake, 22 Vet. App 111, 115-16 (2008). 

In the present case, the Board has considered the complaints of severe migraine headaches, as voiced by the Veteran. The schedular rating criteria specifically provides for ratings based both on the severity of the headache episodes themselves as well as the level of resulting economic impairment. The Veteran does not have any symptoms or impairment from the service-connected headache disability that are unusual or are different from those contemplated by the schedular rating criteria. While she has reported some interference with employment resulting from her headaches, on a concurrent May 2014 VA psychiatric examination, the Veteran confirmed that she was currently employed full-time and that her work attendance was good. For these reasons, the Board finds that the schedular rating criteria in this case are adequate to rate the migraine headache disability at issue. In the absence of evidence that the schedular rating criteria is inadequate to rate the disability, the Board is not required to remand this case to the RO for the procedural actions outlined in 38 C.F.R. § 3.321(b)(1). See also Bagwell v. Brown, 9 Vet. App. 237, 238-9 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995). The Veteran has also not asserted, and the evidence of record has not suggested, any such combined effect or collective impact of multiple service-connected disabilities that create such an exceptional circumstance to render the schedular rating criteria inadequate. Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014). 

In conclusion, the preponderance of the evidence is against a compensable initial rating prior to May 6, 2014 and in excess of 50 percent thereafter on any basis for a migraine headache disability. As a preponderance of the evidence is against the award of a higher rating, the benefit of the doubt doctrine is not applicable in the instant appeal. See 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 4.3, 4.7. 









ORDER

A compensable initial rating prior to May 6, 2014 for migraine headaches is denied. 

A disability rating in excess of 50 percent commencing May 6, 2014 is denied. 




____________________________________________
H. SEESEL
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs